IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD LEE HATCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14-cv-67-WHA |
| | ) | |
| KIM TOBIAS THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, plaintiff Ronald Lee Hatcher ("Hatcher"), an inmate of the Alabama Department of Corrections, claims that defendant Kim Tobias Thomas ("Thomas"), the former[1] Commissioner of the Alabama Department of Corrections ("ADOC"), violated Hatcher's rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Doc. Nos. 1, 8, 12, 16. Hatcher also claims Thomas violated Hatcher's equal protection rights. Doc. No. 28.

Defendant filed special reports and supporting evidentiary materials addressing Hatcher's claims for relief. Doc. Nos. 18, 24, 34, 38, 39, 51. Upon consideration of the evidentiary materials filed in support thereof, the court construes defendant's reports as a motion for summary judgment, and upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that defendant's motion for summary judgment is due to be granted.

**II. SUMMARY JUDGMENT STANDARD**

---

[1] Thomas was the ADOC Director in 2014, when Hatcher filed suit. Thomas is no longer the Director of the ADOC. *See* http://www.doc.state.al.us/ExecutiveBios.aspx (last visited Jan. 30, 2017).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Hatcher to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is

2

entitled to it . . . .").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam).  Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Hatcher fails to demonstrate a requisite genuine

3

dispute of material so as to preclude summary judgment on his claims against the defendant. *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

### A. Plaintiff's Claims and Requested Relief

Hatcher's claims for relief evolved throughout his pleadings. In his initial complaint, dated January 28, 2014, he requested "money damages . . . and whatever else the court deems just and fair"; he complained that defendant Thomas engaged in "misconduct of segregation and violation of the 14th Amendment." Doc. No. 1 at 2-4. He alleged that in *Henderson v. Thomas*, 913 F. Supp. 2d 1267 (M.D. Ala. 2012), the Honorable Myron H. Thompson ruled the State of Alabama violated the ADA and RA. Doc. No. 1 at 3. Hatcher alleged that he is HIV-positive, and that he "has been discriminated against by the defendant (State of Alabama) for conduct that actually violated clearly established Federal Constitution's Fourteenth Amendment law, the defendant was personally responsible for the violation of Hatcher's right." Doc. No. 1 at 2-4. In *Henderson*, the court ruled that the ADOC violated the ADA and RA by failing to provide an individual assessment of HIV-positive prisoners in its housing and other treatment of them. *Henderson*, 913 F. Supp. 2d at 1312, 1316-18.

Hatcher thereafter clarified that he was seeking money damages for violation of the ADA and RA where the misconduct actually violated the Fourteenth Amendment, and Hatcher sued Thomas in his official capacity only and not in his individual capacity. Doc. Nos. 8, 12, 16. After Hatcher later referred to a claim under 42 U.S.C. § 1983 for violation of the Equal Protection Clause, the Court directed Hatcher to amend his complaint to describe how Thomas discriminated against him in violation of his right to equal protection, to set out what Thomas did to violate the

ADA and RA, and to identify the injuries for which he seeks money damages.  Doc. No. 20 at 4; Doc. No. 25.

Hatcher amended.  Doc. No. 28.  Hatcher clarified that he is seeking an order declaring Thomas's "policy of intentional discrimination/segregation of Hatcher violated the ADA/RA and [his] rights of equal protection of law.  That the exclusion of Hatcher from defendant services, programs, and activities created actual, concre[te] injuries toward Hatcher."  *Id.* at 7. Hatcher requested compensatory damages of one million dollars against Thomas in his official capacity under the ADA and RA.  He sought compensatory damages of one million dollars against Thomas in his individual capacity under 42 U.S.C. § 1983, and he sought punitive damages of one million dollars against Thomas in his individual capacity under § 1983, as well as fees and costs.  *Id.*  In response to Thomas's supplemental report, Hatcher further clarified that his request for damages is for past violations, not present violations.  Doc. No. 44 at 1. He also increased his request for punitive damages to 1.9 million dollars for violation of § 1983.  *Id.* at 5.

Courts should consider whether a pro se complaint could be liberally construed to request nominal damages before dismissing it.  *See Magwood v. Sec'y, Fla. Dep't of Corr.*, 652 F. App'x 841, 845 (11th Cir. 2016) ("Although [the pro se plaintiff's] complaint did not specifically request nominal damages, he did request appropriate relief generally, and the district court should consider whether nominal damages are available under his original complaint.") (alteration added) (citing *Hughes v. Lott*, 350 F.3d 1157, 1162-63 (11th Cir. 2003)), *cert. denied sub nom. Magwood v. Jones* (U.S. Jan. 9, 2017).  Although Hatcher's original filing asked for unspecified relief, in his most recent filing Hatcher stated that nominal and punitive[2] damages are available to him, but he

---

[2] Hatcher seeks punitive damages under § 1983 only, not under the ADA or RA.  Doc. No. 28, at 7.

specifically did not ask for nominal damages. *Id.* ("§ 1997e(e) does not bar Hatcher's recovery of nominal or punitive damages").  Instead, he sought punitive damages of 1.9 million dollars for a violation of § 1983.  Doc. No. 44 at 5.  Moreover, the large dollar amount he seeks is inconsistent with a request for nominal damages.  *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (holding that nominal damages should be one dollar).  Hatcher was given multiple opportunities to amend his complaint, he demonstrated that he knew nominal damages could be available, yet he chose not to ask for them.  Under these circumstances, the court declines to construe Hatcher's complaint to include a claim for nominal damages.  Hatcher does not seek injunctive relief.

### B. Summary of Material Facts

The court views the evidence in the light most favorable to Hatcher, the nonmoving party. For the time relevant to his complaint, Hatcher was an HIV-positive prisoner at Limestone Correctional Facility in Harvest, Alabama, and Thomas was the ADOC Commissioner. Hatcher submitted this lawsuit on January 28, 2014. Doc. No. 1 at 4. By July 29, 2014, Hatcher had been moved to Bibb Correctional Facility.[3]  Doc. No. 31.

*Henderson* was a class action for declaratory and injunctive relief under Federal Rule of Civil Procedure 23(b)(2), in which the plaintiff class included all present and future HIV-positive prisoners in the ADOC.  *Henderson*, No. 2:11-cv-00224-MHT, Order of Aug. 30, 2012, ECF No. 188, at 21-22 (Ala. M.D.) (certifying the class).  In 2012, Hatcher was a member of the plaintiff class in *Henderson* and a party to the Settlement Agreement and Entry of Stipulated Order entered by Judge Thompson on September 30, 2013. Doc. No. 18-3.  The court in *Henderson* ruled, among

---

[3] Hatcher currently resides at Bibb Correctional Facility. *See* http://www.doc.state.al.us/InmateInfo.aspx (last visited Jan. 30, 2017).

other things, that the ADOC violated the ADA and RA when it failed to make individualized

determinations before segregating all HIV-positive prisoners into certain dorms, forcing them to

wear white armbands, and preventing them from having jobs in food services. *Henderson*, 913 F.

Supp. 2d at 1294-98, 1306, 1309-18. As part of the relief in *Henderson*, the parties agreed, among

other things, to discontinue separate housing for HIV-positive prisoners; to revise or eliminate

HIV-specific rules, policies, protocols, regulations and standard procedures; and to allow ADOC

to use armbands to identify inmates housed in particular housing units so long as the armband does

not disclose directly or indirectly a prisoner's HIV status. Doc. No. 18-3, at 3-25. The class in

*Henderson* did not seek money damages, and the order in *Henderson* approving the settlement

agreement specifically provided that it did not mandate or constitute an obligation for any money

payment to inmates. *Id.* at 22. It further indicated:

> Moreover, nothing in this Order creates any basis for any purported or actual Class
> Member to seek any financial recovery or monetary benefit of any kind from any
> Defendant, the State of Alabama and/or the Alabama Department of Corrections.
> Nothing in this Order is intended to curtail the rights of individual prisoners with
> HIV to bring lawsuits for violations of the Americans with Disabilities Act or the
> RA, which are not otherwise barred for reasons unrelated to this Order.

*Id.* The court retained jurisdiction to enforce the order. *Id.* at 23. The parties agreed to submit to

mediation of any dispute related to the order, and they agreed that filings related to disputes not

first submitted to mediation would be dismissed without prejudice pending the outcome of

mediation. *Id.* at 24.

Thomas submitted an affidavit indicating that he did not know Hatcher or have contact

with him, that he delegated the daily operation of Limestone to the warden or staff, and that he had

no involvement in the daily treatment of inmates. Doc. No. 18-2 at 1-2. Thomas denied that he

discriminated against Hatcher or that Hatcher was injured or damaged. *Id.* at 2. Thomas stated he

had no reason to doubt reports that Limestone was in compliance with *Henderson*, and he read no reports of discrimination or injury involving Hatcher. *Id.* Thomas also submitted his answers to interrogatories in *Henderson*, in which he stated he was not Commissioner when the policies related to HIV-positive prisoners were adopted, but he believed the policies to be rational and served ADOC prisoners, staff, contractors, and the public. Doc. No. 34-2 at 5-6.

DeWayne D. Estes, who was Warden III at Limestone during the time relevant to this complaint[4] and is not a party to this suit, averred in March 2014 that the ADOC provided Hatcher with access to medical care, nourishment, law library, trade school, religious services, and exercise time that met or exceeded the ADOC regulations. Doc. No. 18-1 at 1. He further averred that Hatcher had not complained about discrimination, and that Limestone was in full compliance with the *Henderson* decree, the ADA, and all state and federal laws. *Id.* at 2. Estes averred in an affidavit filed August 5, 2014, that Hatcher wore a colored wrist band after *Henderson*, but the wrist band had nothing to do with Hatcher's HIV status or a particular HIV dorm. Doc. No. 34-1 at 1. Estes provided a list of prison programs that Hatcher completed from 1990 to 2011. *Id.* at 2.

Hatcher avers that he is suing Thomas for intentional discrimination under the ADA and RA. Doc. No. 44-1 at 1. He avers that he was forced to wear a white armband that disclosed his HIV-positive status in violation of the ADA and RA. *Id.* He avers that Thomas discriminated against him in violation of his equal protection rights, the ADA, and the RA by denying Hatcher integrated housing and excluding him from food service jobs based on his HIV-positive status. *Id.* at 2. Hatcher makes clear that he is complaining about past conduct, though he does not state the

---

[4] Estes is now Warden at St. Clair Correctional Facility. *See* http://www.doc.state.al.us/FacAddr.aspx (last visited Jan. 30, 2017).

dates of the alleged violations. Doc. No. 44 at 1.

In an August 22, 2014 affidavit, Estes averred that "Mr. Hatcher is not allowed to work the kitchen detail for reasons unrelated to his HIV status."   Doc. No. 39-1 (sealed). The court has reviewed the sealed version of Estes's affidavit, and it confirms that Hatcher was not allowed to work in food services for a reason that is unrelated to Hatcher's HIV status.  *Id.*  Hatcher avers that Thomas said Hatcher could not work in the kitchen because he tested positive for Hepatitis C. Doc. No. 44-1 at 2.   Another inmate, Robert Twyman, Jr., avers that staff at Childersburg Community Work Center let him work in the kitchen knowing he had Hepatitis C. Doc. No. 46-1.

According to Ruth A. Naglich, Associate Commissioner of the ADOC, there is not a policy that per se prohibits inmates who test positive for Hepatitis C from working in food services.  Doc. No. 51-1, at 1.  Instead, "[a]n individualized determination is made by a licensed healthcare professional with respect to each inmate based on his or her current symptoms and health status." *Id.* at 1-2. The ADOC policy, dated March 19, 2014, is set out in AR 701, and the medical clearance form is dated June 2014.  Neither the policy nor the medical clearance form provide for a blanket ban on Hepatitis C-positive prisoners working in food service.  Doc. No. 51-1 at 3-16.

### C. ADA and RA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.A. § 12132. Section 504 of the RA provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program

or activity receiving Federal financial assistance . . . ."  29 U.S.C.A. § 794(a). Both laws apply to activities provided in Alabama state prisons.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("[s]tate prisons fall squarely within the statutory definition of 'public entity'"); *Bircoll v. Miami–Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (citing *Yeskey*, 254 U.S. at 211). Except for the federal funding requirement in the RA, both laws follow the same standards, and cases that apply to the ADA also apply to the RA. *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000); *see also Henderson*, 913 F. Supp. 2d at 1287.  To state a claim under the ADA or RA,

> a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll*, 480 F.3d at 1083 (citation omitted). A private person may sue a public official in his official capacity for money damages under the ADA for conduct that *actually* violates the Fourteenth Amendment . . . ."  *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (holding there is no individual capacity[5] liability under the ADA or RA).  HIV is a disability under the ADA. *Henderson*, 913 F. Supp. 2d at 1287.

### 1.  *Henderson* and Damages

Hatcher maintains that the ruling in *Henderson* supports his claim for compensatory damages. It does not. First, *Henderson* was a class action certified under Rule 23(b)(2) for injunctive and declaratory relief, not damages.  *Henderson*, No. 2:11-cv-00224-MHT, ECF No. 188, at 21-22 (certifying the class).  Rule 23(b)(2) contemplates relief for the class as a whole, and

---

[5] Hatcher does not sue Thomas under the ADA and RA in his individual capacity.

it "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011), and where "monetary relief is not incidental to the injunctive or declaratory relief," *id.* at 360. Second, the consent decree in *Henderson* did not address the question of damages but instead left open the possibility for "individual prisoners with HIV to bring lawsuits for violations of the [ADA] or the [RA], which are not otherwise barred for reasons unrelated to this Order." Doc. No. 18-3, at 22.  Third, to the extent Hatcher suggests *Henderson* supports individualized awards to HIV-positive prisoners, the court in *Henderson* emphasized that it was not holding that any *particular* HIV-positive prisoner should be housed with HIV-negative prisoners, but rather "how prisoners should be treated based on their HIV-positive status must depend upon an individual-by-individual assessment of these prisoners that honors each prisoner's rights under the ADA . . . ."  *Henderson*, 913 F. Supp. 2d at 1318. Consequently, even though Hatcher was a member of the class in *Henderson*, he cannot simply cite *Henderson* and expect to receive money damages. The court further concludes that even if damages were available despite the settlement in *Henderson*,[6] Hatcher cannot obtain damages because he has not alleged a physical injury as required by 42 U.S.C. § 1997e(e).

## 2.  Compensatory Damages

Thomas argues that Hatcher cannot obtain money damages because he fails to allege any physical injury. Doc. No. 18, at 4-5. Federal law prohibits prisoners from bringing federal civil actions for mental and emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.  *See* 42 U.S.C. § 1997e(e).  Section 1997e(e)

---

[6] Thomas does not raise the defense of res judicata to Hatcher's claim for damages.

bars compensatory and punitive[7] damages unless a prisoner "can demonstrate a (more than de minimis) physical injury." *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015) (citations omitted). Section 1997e(e) applies to all civil actions, *see id.*, which therefore includes the ADA and RA. *See C.S. v. Thomas*, No. 5:14-cv-01022-AKK-JEO, 2016 WL 2605531, at *4 (N.D. Ala. Apr. 8, 2016) (ruling that § 1997e(e) applies to the ADA and RA).

Here, Hatcher's allegations that he was segregated, denied access to programs, and forced to wear a white arm band do not constitute physical injuries. *Cf. Brooks*, 800 F.3d at 1298 (prisoner alleged no physical injury where prisoner was threatened, taunted, segregated, placed in restraints, had loose stools, and was forced to defecate in his own jumpsuit for two days); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir.) ("the physical injury must be more than de minimis, but need not be significant"), *reh'g en banc granted, opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *and opinion reinstated in relevant part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc). Hatcher is therefore precluded by § 1997e(e) from recovering compensatory damages, and his request for compensatory damages is due to be dismissed without prejudice. *Harris*, 216 F.3d at 980 (dismissal under § 1997e(e) is without prejudice).

### 3. Declaratory Relief

Hatcher seeks a declaration that the ADOC policy of intentional discrimination and segregation violated the ADA and RA. Doc. No. 28, at 7. The court in *Henderson* already made that determination, which led to the injunctive relief set out in the Stipulated Order of September 30, 2013. Doc. No. 18-3; *Henderson*, 913 F. Supp.2d at 1318 ("The policy is also infected . . . by

---

[7] Hatcher does not seek punitive damages for violation of the ADA and RA, and they are not available in any event. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.") (footnote omitted).

an intentional bias against HIV-positive people . . . ."); *see also C.S.*, 2016 WL 2605531, at *5 (ruling that inmate could not obtain declaratory relief based on *Henderson*, and the inmate should seek enforcement of *Henderson* through class counsel).  Consequently, Hatcher's request for declaratory relief is due to be dismissed without prejudice. *See C.S.*, 2016 WL 2605531, at *5 (dismissing request for declaratory relief without prejudice).

### D. Equal Protection Clause

Hatcher sues Thomas in his individual capacity for discriminating against Hatcher in violation of the Equal Protection Clause.  Hatcher seeks declaratory relief, compensatory damages, and punitive damages.  To demonstrate a violation of the Equal Protection Clause, Hatcher must, at the very least, allege that he is similarly situated with other persons who were treated differently and that Thomas treated him differently based on a constitutionally protected interest. *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (per curiam); *see also Foley v. Orange Cty.*, 638 F. App'x 941, 944 (11th Cir. 2016) ("Equal-protection claims generally concern governmental classification and treatment that impacts an identifiable group of people differently than another group of people."), *cert. denied*, 137 S. Ct. 378 (2016).  Where a plaintiff belongs to no suspect class and the governmental action violated no fundamental right, the claim is subject to only rational basis review.  *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) ("The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it.").  "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Id.* "To be similarly situated, the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation marks, citation, and emphasis omitted).  Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993) ("Error, mistake in judgment or arbitrary administration in applying a facially neutral statute does not violate equal protection.") (citation omitted).  Mere disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).  Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. *GJR Inv., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998).

Thomas states that he did not know Hatcher, did not intend to discriminate against Hatcher personally, and was not involved in the daily operation at Limestone.  Doc. No. 18-2.  Hatcher states he was denied a food service job because of his HIV-positive status, but the warden indicates that Hatcher was denied a food service job for medical reasons other[8] than his HIV status, and licensed healthcare professionals in the prison review inmates' health status on an individual basis to determine whether they can work in the kitchen.  Doc. No. 39-1 at 1; Doc. No. 51-1 at 1.  To the extent the court in *Henderson* addressed the discrimination against HIV-positive prisoners, Hatcher's request for declaratory relief is subsumed in the relief awarded in *Henderson*. *E.g.*,

---

[8] The question whether ADOC officials should have allowed Hatcher to work in the kitchen despite testing positive for Hepatitis C is not before the court.

*Henderson*, 900 F. Supp. 2d at 1313 ("Requiring all HIV-positive prisoners to wear white armbands that disclose their HIV status does not serve a legitimate purpose. This policy constitutes unlawful, and, indeed, intentional, discrimination under the ADA."); *id.* at 1316 ("Even if the court were to apply *Turner* [*v. Safley*, 482 U.S. 78 (1987)] formally, it would not find the ADOC's current segregation policies justified."); *id.* at 1318 ("The policy is also infected, and the reasons the ADOC has proffered for its continued existence undermined, by an intentional bias against HIV-positive people"); *see C.S.*, 2016 WL 2605531, at *5 (dismissing without prejudice request for declaratory relief concerning ADOC policies against HIV-positive by inmate who was a member of the plaintiff class in *Henderson*, and directing inmate to seek potential relief by enforcement of the consent decree).

All that remains, then, is Hatcher's request for compensatory and punitive damages for violation of the Equal Protection Clause. As previously discussed, Hatcher's request for compensatory and punitive damages is due to be dismissed without prejudice because he does not allege a physical injury as required by 42 U.S.C. § 1997e(e). *See Brooks*, 800 F.3d at 1307.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment on behalf of the defendant be GRANTED;

2.  This case be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further

ORDERED that on or before February 15, 2017, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate

Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see also Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE, this 1st day of February, 2017.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE

16